UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**LOUIS SCHWARZ and DORIS SCHWARZ,**

    Plaintiffs,

v.                                           Case No: 5:18-cv-608-Oc-34PRL

**THE VILLAGES CHARTER SCHOOL, INC., THE HOLDING COMPANY OF THE VILLAGES, INC., and RANDY MCDANIEL,**

    Defendants.

## REPORT AND RECOMMENDATION[1]

This dispute began over seven years ago when Plaintiffs (and several other individuals), who are deaf residents of the Villages, brought a disability discrimination action against the Villages Charter School for failing to provide them with sign language interpreters at the Lifelong Learning College. Plaintiffs ultimately prevailed in the first suit and now bring this retaliation action alleging that Defendants retaliated against them throughout the prior litigation. (Doc. 25).[2] Defendants jointly move to dismiss Plaintiffs' Second Amended Complaint. (Doc. 33).

**I.**    **Background**

In the midst of what would be a lengthy litigation, Louis and Doris Schwarz (the plaintiffs here and in the earlier litigation) allege that in November 2014, John Wise, speaking for the

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Initially in this action, there were 12 plaintiffs and four defendants. However, after settlement only two plaintiffs and three defendants remain.

Villages Holding Company, as well as the Villages Charter School, said, in a deposition, that if the Villages Charter School had to provide accommodations to deaf people the Holding Company would simply close the Lifelong Learning College. (Doc. 25, ¶ 32). Plaintiffs allege that this was a threat, which intended to discourage them from, and punish them for, seeking and obtaining accommodations that they were lawfully entitled to. That prior case (5:12-cv-177), which began in 2012 against multiple defendants, ultimately proceeded against the Villages Charter School to a pretrial conference in October 2016 and 16-day jury trial in January and February 2017.

In addition to their general allegations that the Villages Charter School "threatened to close down the lifelong learning program," and that Gary Lester, a corporate representative of the Holding Company, also made such a threat, they highlight some of the detail of Mr. Wise's testimony in an effort to reveal the School's intent. (Doc. 25, ¶¶ 30-32).[3] Specifically, they note that when asked to explain the difference between accommodating someone in a wheelchair (which the Villages Charter School apparently did) versus providing sign language interpreters (which they didn't), Mr. Wise apparently said "where does this end," allegedly referring to having to provide sign language interpreters on a continuing basis. (Doc. 25, ¶ 32). Then, apparently to further explain his point, he revealed his utter confusion that being deaf and speaking American Sign Language is somehow equivalent to simply speaking a foreign language: "Let's just say we have a bunch of Chinese people that live in the Villages. Are we going to have interpreters for them in every event in The Villages?" (Doc. 25, ¶ 32).

---

[3] In paragraph 30, while Plaintiffs state that Randy McDaniel, who is also a defendant, admitted that the Villages Charter School didn't provide sign language interpreters, Plaintiffs don't actually allege that he threatened to close the Lifelong Learning College. Plaintiffs mention in Count II, at paragraph 75, that the Villages Charter School, McDaniel, and the Holding Company retaliated against them, and list several forms of their alleged retaliation (including blaming them for the closure), but it would be reading too much into the complaint to say that Plaintiffs have sufficiently alleged that *he* threatened to close the college.

Assuming, as we must, that the well-plead facts in the complaint are true, Mr. Wise spoke for the Holding Company and the Villages Charter School (both defendants here) when he said that the Lifelong Learning College would close if it had to provide accommodations for deaf students (like the plaintiffs). The principal purpose of this message, according to Plaintiffs, was to discourage them from continuing their litigation and to subject them to disdain and ridicule by other members of the community, many of whom enjoyed the benefit of the classes offered.

Indeed, Plaintiffs allege that on the eve of trial the Villages Charter School made good on what Plaintiffs understood all along to be a threat: on December 1, 2016, led by Mr. Lester (who is alleged to also be the Villages Charter School's director), the Villages Charter School dissolved the Lifelong Learning College. (Doc. 25, ¶ 33). Then, to show they weren't mistaken about the perceived nature of the threat, Plaintiffs contend that the very next day Defendant Randy McDaniel and the Lifelong Learning College program director Michelle Shideler went to the local newspaper "blaming Plaintiffs for the closure of the lifelong learning program [and] the cancellation of more than 18,000 enrollments for the spring semester." (Doc. 25, ¶¶ 34-36). The published article, entitled "Lawsuit Forces Closure of Lifelong Learning College," which mentions Plaintiff Louis Schwarz by name, contains statements (which Plaintiff refers to as false and defamatory) that "it's sad that one group of people and their attorneys forced us to close our doors," "we've tried to offer reasonable accommodations to these folks, including hearing interpreters," and "it's a shame that a lawsuit by one group can negatively impact the lives of so many people across our entire community." (Doc. 25, ¶ 36).

At a minimum, Plaintiffs insist that the contention that they were offered sign language interpreters was false at the time it was made and inconsistent with the record in the first lawsuit. (Doc. 25, ¶¶ 29; 39). According to Plaintiffs, "Defendants maliciously chose to push the false

- 3 -

narrative to cast blame on Plaintiffs and further ostracize them from the Villages community." (Doc. 25, ¶ 40). On this front, Plaintiffs say Defendants were successful: they allege that as a result of the threat, closure, and statements in the article (along with two other similar articles), they have suffered in-person, telephonic, and electronic harassment, including direct threats of violence against Mr. Schwarz.[4] (Doc. 25, ¶¶ 44-46).

On the litigation front, however, if the Defendants intended to dissuade Plaintiffs, they failed. In fact, the litigation against the Villages Charter School proceeded and Louis and Doris Schwarz, along with other plaintiffs, prevailed. When a jury of their peers was asked whether the Villages Charter School intentionally discriminated against them because of their disability, and whether the Defendant's discrimination excluded them from participating in, or denied them the benefit of, the Villages Lifelong Learning College's services, programs, or activities, the jury said yes. (5:12-cv-177, Docs. 351, 352). And when asked whether the Defendant had established by a preponderance of the evidence that the Plaintiffs' requested accommodation of an American Sign Language interpreter would have imposed an undue financial or administrative burden on the Defendant's operations, the jury said no. (5:12-cv-177, Docs. 351, 352).

Now, in Count I of this action, Plaintiffs seek injunctive relief under Title V of the ADA against the Villages Charter School and McDaniel for retaliation, while only Ms. Schwarz seeks the same relief against the Holding Company. In Count II, Plaintiffs both seek relief against the Villages Charter School and McDaniel, while Ms. Schwarz also seeks relief against the Holding Company, for retaliation under the Rehabilitation Act. Lastly, in Count III, Louis Schwarz asserts a claim for state law defamation against the Villages Charter School and McDaniel based on

---

[4] According to Plaintiffs, angry residents of the Villages posted Plaintiff Schwarz's address and photos of him on public internet forums. The comments on these forums include one from a poster that claimed to have gone by Schwarz's home and that the poster "would have loved to have a M-80, & see who runs out of the house when it went off." (Doc. 25, ¶ 45).

statements made by McDaniel and Shideler that were published in two articles in the Villages Daily Sun, one on December 2, 2016 and another on December 8, 2016, which was then posted online on December 12, 2016.

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences from there. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit uses a two-pronged approach in applying the holding in *Ashcroft* and *Twombly*. First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

A well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S.

at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

### III.   DISCUSSION

#### A.  Retaliation Under Title V of the ADA

1. In Count I, Plaintiffs seek injunctive relief for retaliation under Title V of the ADA. Although Plaintiffs argue that McDaniel is included in their claim, in the amended complaint they fail to allege that the ADA applies to him. *See Morgan v. Christensen*, 582 F. App'x 806, 809 (11th Cir. 2014) (finding that an ADA claim was properly dismissed because the plaintiff failed to allege that the defendant owned, leased, or operated a place of public accommodation). Instead, Plaintiffs only allege sufficient facts to establish that the ADA applies to the Villages Charter School and the Holding Company. (Doc. 25, ¶¶ 52-53). Notably, in paragraphs 52 and 53 they state that "Defendants VCS and the Holding Company own, lease, and/or operate places of public accommodation" under the ADA, but they don't include McDaniel in this or any similar allegation. These omissions alone are sufficient to support his motion to dismiss. *Morgan*, 582 F. App'x at 809.

The omission doesn't appear to simply be a scrivener's error. While elsewhere in the amended complaint they complain about McDaniel (they allege he made derogatory statements to the newspaper), they also neglect to include him when directly stating their claim for retaliation in Count I. They include him in the title of Count I and an introductory paragraph (¶ 49), but in directly addressing the retaliatory acts against them in violation of the ADA, they only include the Villages Charter School and the Holding Company. (Doc. 25 ¶¶ 61-63); *see Morgan*, 582 F. App'x

at 809 (finding that an ADA claim was properly dismissed because the plaintiff failed to allege that the defendant engaged in any act or practice made unlawful by the ADA). Specifically, in paragraph 61 they state that "Defendants VCS and the Holding Company retaliated against the Plaintiffs for exercising their rights when Defendants" took certain actions and then in subsequent paragraphs (¶¶ 62-63) they state that their injuries were the "direct and proximate result" of "Defendants VCS and the Holding Company." Even earlier in the amended complaint the threats about closure and the actual closure relate to VCS and the Holding Company, not McDaniel (*see, e.g.*, ¶¶ 30-33).

While Plaintiffs argue in their brief that much should be made of the allegation that McDaniel was the Director of Education of the Villages Charter School, that contention alone doesn't establish that he is individually liable under Title V of the ADA: it would be too much to read that fact as sufficient to establish that he owned, leased, or operated a place of public accommodation. *See Morgan*, 582 F. App'x at 809; *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (finding that the individual defendants (including the college's former president, the vice president of Academic Affairs, and members of faculty and staff) did not operate a place of public accommodations for purposes of liability under the ADA). It would also be inadequate to make up for the other pleading deficiencies in Count I itself, as discussed above. As such, the Court submits that McDaniel's motion to dismiss him from Count I is due to be granted.

2. The Court next turns to the Villages Charter School and the Holding Company. Title V prohibits retaliation against an individual who has opposed an act or practice made unlawful by the Act's anti-discrimination provisions. 42 U.S.C. § 12203(a). Title V does not have its own remedial scheme, instead, the remedies depend on the context in which the alleged retaliation arose. *See* 42 U.S.C. § 12203(c); *G. v. Fay Sch.*, 931 F.3d 1, 10–11 (1st Cir. 2019); *Rumler v. Dep't*

*of Corr.*, 546 F. Supp. 2d 1334, 1341 (M.D. Fla. 2008). Plaintiffs' claim arises under Title III of the ADA (i.e., disability discrimination in a place of public accommodation), so we look to Title III for the appropriate remedies. The Eleventh Circuit has made it clear that "there is no private right of action for money damages under Title III." *Berkery v. Kaplan*, 518 F. App'x 813, 814 (11th Cir. 2013). Title III allows for only "forward-looking, injunctive relief." *Fay Sch.*, 931 F.3d at 11. Further, "because injunctions regulate future conduct," Plaintiffs must allege "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

Plaintiffs allege that Defendants' retaliatory acts included threatening to close the Lifelong Learning College, ultimately closing the college, and (in 2016) publicly blaming Plaintiffs in the Villages Daily Sun for the closure. (Doc. 25, ¶ 61). However, a case may become moot if the challenged conduct cannot reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 170 (2000). Here, there is no risk that Defendants will threaten to close the college or close the college again because it has been closed since 2016. *Cf. Fay Sch.*, 931 F.3d at 4, 11 (finding a Title V retaliation claim for injunctive relief moot when the plaintiff aged out of the school and the retaliatory conduct would not occur again). Indeed, in *Fay*, where the (defendant) school had removed the parents of a student who was requesting accommodations from the parent's association and took other retaliatory actions against them, the court found that the plaintiff's claim for retaliation under Title V and Title III were moot because the child could no longer (and couldn't because of his age) attend the school in the future. *Id.* Similarly, any retaliation related to closing the college or other possible threats related to the college would be moot, as the college no longer exists to offer classes to Plaintiffs or anyone else for that matter.

Beyond threats of closure and actual closure, Plaintiffs only allege that Defendants publicly blamed them in 2016 and allege no other retaliatory conduct over the past three years. Their claim under the ADA, limited to prospective relief, appears moot. The amended complaint is about what happened in 2016; there are no facts to support an imminent threat of future injury by these Defendants.

For the first time at the hearing on this motion, however, Plaintiffs claimed that there is an imminent risk that Defendants may retaliate against them again in response to *this* lawsuit and that the Court could enjoin Defendants from doing so. Yet injunctive relief requires more than just mere speculation of a "hypothetical-threat of future injury," and Plaintiffs have alleged no facts regarding a "real and immediate" future injury that needs to be enjoined. *Shotz*, 256 F.3d at 1081. Further, a court may not simply order a defendant to comply with the ADA or "obey the law," which is essentially what they seek. *See Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1412 (11th Cir. 1998); *Access for the Disabled v. Osceola Enter. of Kissimmee, Inc.*, No. 6:09-cv-1805, 2010 WL 2889823, at * 1 (M.D. Fla. July 22, 2010).

Plaintiffs also request, as they specifically state it in the amended complaint, that the Court direct Defendants to issue a retraction of their statements and an apology. However, apologies and retractions are not cognizable forms of equitable relief. *See Berman v. Kafka*, No. 3:13-cv-1109, 2015 WL 12940184, at *3 (M.D. Fla. July 10, 2015); *Walker v. Iske*, No. 8:12-cv-1539, 2012 WL 5341381, at * 2 (M.D. Fla. October 29, 2012) ("This Court does not have authority to compel Defendants to apologize."); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329–30 (11th Cir. 2013) (explaining the type of injunctive relief permitted under Title III).

Accordingly, because, as plead, Plaintiffs' claim for injunctive relief under the ADA is moot, and because they have otherwise failed to show a real and immediate threat of future injury,

Count I is due to be dismissed. (This is also true as to McDaniel: there are no facts to support a claim for injunctive relief against him even if Plaintiffs had plead he was subject to the Act, and his motion is also due to be granted on Count I for this reason.)

### B. Rehabilitation Act Retaliation Claim

1. In Count II, Plaintiffs seek injunctive relief and compensatory damages for retaliation under the Rehabilitation Act. To state a claim under the Rehabilitation Act, Plaintiffs must allege that Defendants are recipients of federal funding. 29 U.S.C. § 794; *Shotz v. City of Plantation*, 344 F.3d 1161, 1169 (11th Cir. 2003). Although Plaintiffs have sufficiently alleged that the Villages Charter School and the Holding Company have offered programs that receive federal financial assistance (Doc. 25, ¶¶ 68, 70), they fail to allege (as they did with the ADA) that the Rehabilitation Act applies to McDaniel. *Davis v. Starkman*, No. 05-80527-CIV, 2005 WL 815633, at *4 (S.D. Fla. October 5, 2005) ("[I]ndividuals that do not actually receive federal financial assistance in their individual capacities cannot be sued personally under the Rehabilitation Act.") (citing *Emerson v. Thiel Coll.*, 296 F.3d 184, 189–90 (3d Cir. 2002); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999)).

Notably, Plaintiffs fail to actually allege that McDaniel is subject to the Rehabilitation Act or offer sufficient facts to otherwise establish that he is. In paragraph 68, for example, they omit him, instead saying only that "at all relevant times" Section 504 of the Rehabilitation Act has been in effect and "has applied to Defendants VCS and the Holding Company's conduct." And, importantly, with respect to the allegation that he would be subject to the Act they also omit him: "Defendants VCS and the Holding Company have been offering programs, services, activities, or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b)." Their omissions here in Count II are just as consequential as they were in Count I, and the fact that they

allege he was the Director of Education earlier in the amended complaint similarly don't save them. Accordingly, I submit that McDaniel's motion to dismiss is due to be granted on Count II as well.

2.  As to the Villages Charter School and the Holding Company, to establish a prima facie case of retaliation Plaintiffs must show that (1) they were engaged in statutorily protected expression; (2) they suffered an adverse action; and (3) the adverse action was causally related to the protected expression. *Zainulabeddin v. Univ. of S. Fla. Bd. Of Trs.*, 749 F. App'x 776, 782 (11th Cir. 2018). Defendants do not contest that Plaintiffs have satisfied the first element by requesting accommodations and bringing their first suit. (Doc. 33). And a request for accommodations can constitute a protected activity for a retaliation claim. *See Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003).

Defendants instead challenge the adequacy of Plaintiffs' "adverse action" allegation. To establish the "adverse action" element, a plaintiff must allege actions that a reasonable person in their position would view as adverse. *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1181 (11th Cir. 2003)). The Eleventh Circuit has noted that "[i]f we set the bar too high, we run the risk of chilling legitimate opposition to lawful and discriminatory practices, and could stifle a person's willingness to file charges of discrimination." *Id.*

Although adverse action is not merely conduct that a plaintiff dislikes or disagrees with, it need not be traumatic, and the court must analyze the conduct "on a case-by-case basis, using both a subjective and objective standard." *Shotz*, 344 F.3d at 1181, 1183 (finding that releasing private information to the media constituted adverse action, and "a reasonable citizen in [plaintiff's] position would not only view the actions as adverse, but appalling as well, even if they were not

motivated by retaliatory animus"); *see also Persichitte v. Univ. of N. Colo.*, No. 05-cv-1508, 2006 WL 2790407 at *6 (D. Colo. Sept. 27, 2006) (finding that allegations of the defendant disseminating false information to a newspaper about a plaintiff's alleged misuse of state funds "'could well dissuade a reasonable worker from making or supporting a charge of discrimination' for purposes of a motion to dismiss") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Again, Plaintiffs claim here that during the first suit Defendants (specifically VCS and the Holding Company) threatened to close the college if forced to provide sign language interpreters. (Doc. 25, ¶¶ 30-32, 75). Then, one month before trial, Defendants voted to close the college and the very next day, (now including McDaniel) publicly blamed the closure on the Plaintiffs in two newspaper articles. (Doc. 25, ¶¶ 33-36, 75).

Further, the articles specifically named Louis Schwarz and, as a result, he has, among other things, been the target of direct threats of violence from community members on public internet forums. Indeed, community members posted his address and photo online, where one member even commented and claimed to have gone past Mr. Schwarz's home and "would have loved to have a M-80, & see who runs out of the house when it went off."

Taking the allegations as true, to dissuade them from pursuing their prior litigation seeking sign language interpreters, VCS and the Holding Company attempted to discourage them by threatening to close the college, causing an impact to the entire community. They then, indeed, closed the college, publicly blaming it on the Plaintiffs in an effort to punish them for having brought the suit and pursued it, and, at a minimum, causing public ridicule and intimidation. At this stage in the proceedings, I submit that Plaintiffs have sufficiently alleged actions that a reasonable person in their position would view as adverse.

Finally, because the causal link element is construed broadly, Plaintiffs "merely [have] to prove that the protected activity and the adverse action are not completely unrelated." *Higdon*, 393 F.3d at 1220 (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). This they have done. Plaintiffs' first suit was still ongoing when the alleged adverse action occurred. (Doc. 25, ¶¶ 30-36, 75). And Defendants' own words connect the closure of the college to the first lawsuit: "It's so sad that one group of people and their attorneys have forced us to close our doors" and "Every attempt we made to serve these folks and settle this suit has failed." (Doc. 25, ¶ 36). Plaintiffs have thus sufficiently alleged a prima facie case of retaliation.

Accordingly, because there is no dispute that compensatory damages are available under the Rehabilitation Act, *see Barnes v. Gorman*, 536 U.S. 181, 189 (2002); *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015), the Plaintiffs' claims against the Villages Charter School and the Holding Company for compensatory damages should go forward. Defendants' motion to dismiss Plaintiffs' claim for equitable relief against them should be denied.

Plaintiffs' claim for injunctive relief against these Defendants, however, is moot for the same reasons as discussed above and Defendants' motion to dismiss Plaintiffs' claim for injunctive relief should be granted accordingly.

### C. Defamation

In Count III, Louis Schwarz alleges a state law defamation claim against the Villages Charter School and McDaniel based on statements published in two articles in the Villages Daily Sun, one on December 2, 2016, and a second on December 8, 2016, which was later posted online with a different title on December 12, 2016.

1.  In Florida, defamation, which includes both libel and slander, has a two-year statute of limitations. Fla. Stat. § 95.11(4)(g); *Norkin v. Fla. Bar*, 311 F. Supp. 3d 1299, 1303–04 (S.D. Fla.

2018). In Plaintiff's first complaint filed on November 30, 2018, the defamation claim depended solely on the December 2, 2016 article. (Doc. 1). It wasn't until Plaintiff filed an amended complaint on December 12, 2018 that he included the December 8, 2016 article (which Plaintiff dated as December 12, 2016 in his complaint).[5] (Doc. 6).

The date of the first publication— December 8, 2016—is when the statute of limitations began to run. Fla. Stat. § 770.07; *Norkin*, F. Supp. 3d at 1304. Therefore, the article published on December 8, 2016 (and its subsequent iteration of December 12) is time barred by the statute of limitations.[6] Defendants' (VCS and McDaniel's) motion to dismiss this aspect of Count III is, therefore, due to be granted.

2.  As to the timely plead December 2, 2016 article, defamation under Florida law requires a plaintiff to show (1) publication; (2) falsity; (3) that the defendant acted negligently on a matter about a private person; (4) actual damages; and (5) that the statement was defamatory. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Publication requires communication of defamatory matter to one other than the person defamed. *Doe v. America Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001). Although Defendants argue that Plaintiff hasn't satisfied the publication element as to the Villages Charter School, Plaintiff sufficiently alleges that the newspaper article quoted representatives of the school – particularly McDaniel, its Director of Education. (Doc. 25, ¶ 36).

---

[5] Plaintiff concedes that the second article was published in print form on December 8, 2016 and later published online on December 12, 2016. (Doc. 37, p.22). There is no dispute that the printed version was identical to the online version besides the title change.

[6] Plaintiff's contention that reference in the original complaint to "articles" encompassed both the December 2, 2016 and the December 8, 2016 article is unpersuasive. It is clear that he was complaining then about the December 2, 2016 article, as he quoted passages from it and mentioned the date it was published in different sections of the original complaint. (Doc. 1).

Additionally, Plaintiff sufficiently alleges that the statements made by Defendants were false, even if the statements were couched as opinions. Although "pure opinion" statements are not actionable, "if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Turner v. Wells*, 879 F.3d 1254, 1263 (11th Cir. 2018); *Anson v. Paxson Commc'ns Corp.*, 736 So. 2d 1209, 1211 (Fla. 1999) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990)).

Here, the article included statements such as "It's so sad that one group of people and their attorneys have forced us to close our doors. Going back for almost eight years we've tried to offer reasonable accommodations to these folks, including hearing interpreters and assisted hearing devices for any class they wished to attend," "Every attempt we made to serve these folks and settle this suit has failed," "It became obvious that they saw The Villages Charter School as a rich target with deep pockets," and "It's just such a shame that a lawsuit by one group can negatively impact the lives of so many different people across our entire community." At a minimum, Plaintiff sufficiently alleges that the contention that Defendants offered sign language interpreters, including one for every class they wished to attend, during the first suit was false and contradicted by the record. (Doc. 25, ¶¶ 29; 39). This alleged falsehood alone is sufficient to allow the defamation claim to proceed beyond the motion to dismiss as to the Villages Charter School and McDaniel. Thus, their motion to dismiss should be denied as to this article.[7]

Finally, Defendants argue that Plaintiff failed to allege a defamation claim because the statements were about a group and not a specific individual. (Doc. 33). To begin with, the article

---

[7] Defendants requested that the Court dismiss portions of the article that the Court determined to be opinion statements and only allow statements of fact to go forward. However, Plaintiff sufficiently alleged that the quoted portions of the article are false, including the "opinion statements" that imply a false assertion of fact.

did specifically name Louis Schwarz as a plaintiff. (Doc. 25, Exhibit A). In Florida, group defamation is actionable by a member of the group if the group is small enough for the defamation to be reasonably understood to refer to that member. *Adams v. WFTV, Inc.*, 691 So. 2d 557, 557 (Fla. 5th D.C.A. 1997). Since the article named Louis Schwarz, the statements can be reasonably understood to refer to him. Accordingly, Plaintiff has sufficiently alleged a defamation claim as to the December 2, 2016 article.

## IV.  RECOMMENDATION

For the foregoing reasons, it is respectfully RECOMMENDED that:

Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 25) should be **GRANTED** to the extent that Count I of the Second Amended Complaint be dismissed in its entirety, Count II be dismissed as to Defendant McDaniel and any injunctive relief requested by Plaintiffs, and Count III be dismissed as to the article published on December 8, 2016 and posted online on December 12, 2016, and that the Motion otherwise be **DENIED**.

Recommended in Ocala, Florida on October 29, 2019.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy